# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# at LONDON

Civil Action No. 12-92-HRW

RICHARD RAY BAIRD,                                PLAINTIFF,

v.           **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,         DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying Plaintiff's application for disability insurance benefits and supplemental security income benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, and being otherwise sufficiently advised, for the reasons set forth herein, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed his current application for disability insurance benefits and supplemental security income benefits on April 29, 2009, alleging disability beginning on March 11, 2008 due to bipolar disorder, anxiety, depression, panic attacks, shoulder pain, migraines, neuropathy and breast cancer (Tr. 148). This

application was denied initially and on reconsideration (Tr. 47-50, 68-79). An administrative hearing was convened. At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

> Step 1: If the claimant is performing substantial gainful work, he is not disabled.
>
> Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).
>
> Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.
>
> Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.
>
> Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

On August 6, 2010, the ALJ issued his decision finding that Plaintiff was not disabled (Tr. 51-67).

Plaintiff was 52 years old at the time of the hearing decision. He has a high

school education and his past relevant work experience consists of work as a machine repairman, machinist / millwright, cabinet maker, machine offbearer and furniture assembler (Tr. 26-27).

At Step 1 of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. The ALJ then determined, at Step 2, that Plaintiff suffers from bipolar disorder. Social anxiety and has a history of polysubstance abuse, which he found to be "severe" within the meaning of the Regulations (Tr. 56). At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments (Tr. 56). The ALJ further found that Plaintiff could not return to his past relevant work (Tr. 60-61) but determined that he has the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations. The claimant is limited to simple, routine, repetitive tasks not performed in fast-paced production environment, involving only simple[ ] work-related decisions, and[,] in general, relatively few work place changes. He is limited to occasional interaction with supervisors and occasional and superficial interaction with coworkers. He cannot have any contact with the general public . .

(Tr. 57). The ALJ finally concluded that jobs of this type exist in significant numbers in the national and regional economies, as identified by a vocational

3

expert (Tr. 60-61). Accordingly, the ALJ found Plaintiff not to be disabled at Step 5 of the sequential evaluation process.

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner on February 3, 2012 (Tr. 35-40).

Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment [Docket Nos. 17 and 19] and this matter is ripe for decision.[1]

## II. ANALYSIS

### A. Standard of Review

---

[1] Plaintiff initially sought a remand pursuant to Sentence Six of 42 U.S.C. § Section 405(g), contending that a subsequent favorable decision warranted reconsideration, at the administrative level, of this application for benefits. However, the subsequent favorable determination was based on impairments and limitations that were not documented in the evidence before the ALJ in the present matter, and thus the later decision is not germane to the ALJ's determination of disability in *this* case. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009) (explaining that subsequent favorable decision alone is not material evidence that merits remand under sentence six of 42 U.S.C. § 405(g)).

4

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

### B.     Plaintiff's Contentions on Appeal

On appeal, Plaintiff argues that the ALJ improperly discounted the opinion of his treating psychiatrist Alan Myers, M.D. Plaintiff also contends that he qualifies for presumptive disability pursuant to Listing 12.04.

5

## C. Analysis of Contentions on Appeal

Plaintiff's first claim of error is that Plaintiff argues that the ALJ improperly discounted the opinion of his treating psychiatrist Alan Myers, M.D.

In order to be given controlling weight, the opinions of a treating source on issues involving the nature and severity of a claimant's impairments must be well supported by medically acceptable clinical and laboratory diagnostic techniques, and be consistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2). Such opinions receive deference only if they are supported by sufficient medical data. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The ALJ concluded that Dr. Myers' assessment did not qualify. As the ALJ pointed out, Plaintiff's treatment history is inconsistent with Dr.Myers' assessment and Plaintiff's claim of disabling mental impairments since March of 2008 (Tr. 59, 401-02). Although Plaintiff had a history of depression and anxiety with alcohol and drug abuse, the record reflects no hospitalizations for mental health treatment after November 1, 2007, five months before the alleged onset date (Tr. 59, 241-58). During the relevant period, Plaintiff attended mainly routine follow up appointments for medication management and scheduled therapy sessions, and, during his period of sobriety, he was noted to be stable or making some progress. Further, despite alleging disability beginning on March 11, 2008,

6

the record reflects that Plaintiff did not seek treatment for any mental impairment between February of 2008 and March of 2009 . *See McGuire v. Comm'r of Soc. Sec.*, 178 F.3d 1295 (table), 1999WL196508 at *7 (6th Cir. 1999) (noting that where claimant saw doctor only four times in one year, gap in treatment could "reasonably be viewed as inconsistent with a claim of debilitating symptoms").

In addition, the treatment notes of various medical sources are at odds with Dr. Myers' opinion and support the ALJ's findings. On February 19, 2008, Plaintiff told Brian E. Ellis, M.D. that he was "doing much better as long as he [took] his Paxil and Lithium" (Tr. 265). Plaintiff was "in good spirits" and "doing well" on his medications, though no clinical findings were noted (Tr. 265). On March 11, 2008, his alleged onset date, Plaintiff complained of back and shoulder pain after a fall, but there was no mention of a mental condition, nor any clinical findings related to a mental impairment (Tr. 266).

Another therapist assessed Plaintiff as only moderately depressed with mild signs of anxiety (Tr. 300) and, in April 2009, noted Plaintiff was focused and alert, friendly and cooperative, in a good mood, and had clear and coherent thoughts and good insight and judgment, though he reported having bad long-term memory (Tr. 285).

During a psychological evaluation performed by Dr. Catherine Miller,

7

Plaintiff reported having difficulty retaining information and having panic attacks at work, but his mood swings were better and he reported his medications helped (Tr. 278-79). His appearance was neat and clean; his ability to relate was good; and his cooperation with Dr. Miller was excellent (Tr. 279). Plaintiff reported his mood was "ok," his thoughts were logical and goal-oriented, his memory was described as "+/-," and his insight and judgment were fair to good (Tr. 279). Dr. Miller diagnosed Plaintiff with bipolar disorder, assessed his mood as 55 on the Global Assessment of Functioning (GAF) scale and prescribed medications (Tr. 280).

The record demonstrates that Plaintiff attended medication management and therapy appointments at Adanta through March of 2010, at which providers consistently noted he was cooperative and stable or making some progress (Tr. 382-89, 392-99, 413-16, 418-57).

In June of 2009, Plaintiff reported increased anxiety after receiving a court summons, but the therapist noted his depressive symptoms had decreased and his anxiety symptoms were stable, and she indicated he was cooperative, had a bright affect, and was making some progress (Tr. 386).

The following month, Plaintiff related that the severity of his panic attacks had decreased due to his use of positive self-talk, and the therapist observed that although he was fidgety, a sign of anxiety, Plaintiff's mood was bright and his attitude was positive and hopeful (Tr. 431).

On August 12, 2009, a nurse practitioner, Amy Perry, noted Plaintiff reported he was having some mood swings, had a flat affect, and felt "a little sad," but he was "sleeping pretty good," denied suicidal ideation, reported doing well and having an "ok" mood, was cooperative though quiet and withdrawn, and was still showing some progress (Tr. 430). Plaintiff related that he did not like to be around people, but he did go to Kroger and other places (Tr. 430).

In September, Plaintiff reported he was not doing well; he felt irritable and dizzy, and he reported he had no energy and did not feel like doing as many things as he previously did (Tr. 429). Ms. Perry noted Plaintiff was not taking one of his prescribed medications and had unilaterally restarted another medication (Tr. 429).

By the following month, Plaintiff returned to making some progress, and the therapist noted that his anxiety had mildly decreased, his affect was bright, and he was cheerful (Tr. 428). Plaintiff reported he was getting out more, even planning to attend a car show, and that his anxiety was decreased when he went out in public with a friend (Tr. 428).

In October of 2009, Ms. Perry thought Plaintiff appeared sad, but he denied feeling depressed, and the following month, Plaintiff reported that he was going out in public more with a new friend and experienced a decrease in his anxiety symptoms (Tr. 426-27).

Based upon these medical reports, and contrary to Plaintiff's argument, the diagnoses various practitioners assigned to Plaintiff and occasional abnormal clinical findings do not support Dr. Myers' opinion that Plaintiff was markedly limited in several areas and thus precluded from all work (Tr. 401-02). *See Turner v. Comm'r of Soc. Sec.*, No. 07-5235, 2008 WL 582603, at *5 (6th Cir. Mar. 4, 2008) (holding substantial evidence supported ALJ's rejection of physician opinion as unsupported by medical evidence where findings were only occasionally abnormal). Rather, the records from other sources support the ALJ's finding that Plaintiff could perform work that was simple, routine, and repetitive; not performed in a fast-paced production environment; involved simple decisions and relatively few changes; and allowed for occasional interaction with supervisors, occasional and superficial contact with coworkers, and no contact with the public (Tr. 57).

Further, Dr. Myers' own treatment notes are inconsistent with and fail to provide support for the marked limitations he assessed (Tr. 59, 401-02, 419, 422,

424). For example, in January of 2010, Dr. Myers noted Plaintiff reported he was taking his medication regularly and his sleep was variable, but Dr. Myers recorded no clinical findings other than that Plaintiff was cooperative and making some progress and denied medication side effects (Tr. 422).

Dr. Myers next saw Plaintiff on March 23, 2010, the date he completed the questionnaire (Tr. 401-02, 419). Plaintiff reported "doing about the same" and denied suicidal ideation, though he reported experiencing severe back pain (Tr. 419). Though another therapist, Dianne Neal, M.Ed. MHE, indicated on the same day that Plaintiff was quiet and almost lethargic with a blunt affect, Dr. Myers noted that Plaintiff was cooperative and stable with a bright affect, and Ms. Neal did note Plaintiff's anxiety and panic had decreased (Tr. 418-19). Dr. Myers noted few clinical findings that would support his restrictive assessment of Plaintiff's RFC (Tr. 401-02, 419, 422, 424). While Dr. Myers' treatment notes, including his mild clinical findings, bolster the ALJ's finding that Plaintiff could perform work that accommodated his mental impairments, they do not support his opinion (Tr. 57, 401-02, 419, 422, 424).

It is important to note that the ALJ's determination that the opinions of state agency medical consultants were entitled to only some weight does not alter the assessment of Dr. Myers' opinion (Tr. 59). Pl.'s Br. 16. Indeed, in this case, the

11

state agency reviewing consultants concluded that Plaintiff was less limited than the ALJ ultimately determined found (Tr. 57, 319, 347). Given that Dr. Meyers' opinion is not supported by his own treatment notes or the other medical evidence of record, the Court finds no error in the ALJ's assessment if that opinion.

Plaintiff's cursory argument that he qualifies for presumptive disability pursuant to Listing 12.04 is without merit as well. The Sixth Circuit Court of Appeals stated in *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999), "the burden of proof lies with the claimant at steps one through four of the [sequential disability benefits analysis]," including proving presumptive disability by meeting or exceeding a Medical Listing at step three. Thus, Plaintiff "bears the burden of proof at Step Three to demonstrate that he has or equals an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1." *Arnold v. Commissioner of Social Security*, 238 F.3d 419, 2000 WL 1909386, *2 (6th Cir. 2000 (Ky)), *citing Burgess v. Secretary of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). If the Plaintiff "can show an impairment is listed in Appendix 1 ("the listings"), or is equal to a listed impairment, the ALJ must find the claimant disabled." *Buress v. Secretary of Health and Human Services*, 835 F.2d 139, 140 (6th Cir. 1987). "The listing of impairments 'provides descriptions of disabling conditions and the elements necessary to meet the definition of disabled

for each impairment." *Arnold*, at \*\*2, quoting *Maloney v. Commissioner*, 211 F.3d 1269, 2000 WL 420700 (6th Cir. 2000). In order for the Plaintiff "to qualify as disabled under a listed impairment, the claimant must meet all the requirements specified in the Listing." *Id*. This must be done by presenting specific medical findings that satisfy the particular Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-532, (1990). An impairment that manifests only some of the criteria in a particular Listing, "no matter how severely, does not qualify." *Sullivan*, at 530.

Listing 12.04 provides:

> *Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied . . . .
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:

a. Anhedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

I. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractability; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medications or psychological support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase

in mental demands or change in the environment would

be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to

function outside a highly supportive living arrangement,

with an indication of continued need for such an

arrangement.

20 C.F.R. Ch. III, Pt. 404, Subpt. P. App. 1, 12.04

Plaintiff relies on Dr. Myers' assessment to support his argument; however, as explained, *supra*, the ALJ appropriately discounted Dr. Myers' opinion (Tr. 59, 401-02). Moreover, Dr. Myers' opinion does not "fulfill Part B of this [L]isting," as Plaintiff alleges. Specifically, Dr. Myers' assessment is silent as to Plaintiff's activities of daily living, indicates only moderate limitations in social functioning, and makes no mention of any periods of decompensation (Tr. 401-02). Thus, Dr. Myers', even if deemed credible, opinion could not form a

basis for presumptive disability pursuant to Listing 12.04.

## III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This 20th day of September, 2013.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge